UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80156-DMM-1

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JORGE IBARRA,

        Defendant.

_____/

**JORGE IBARRA'S
SENTENCING MEMORANDUM AND
REQUEST FOR A DOWNWARD VARIANCE**

The Defendant, **Jorge Ibarra, ["Mr. Ibarra"]**, by and through his undersigned counsel, files this request for a downward variance from the sentencing guidelines pursuant to *United States v. Booker*, 543 U.S. 220 (2005). Mr. Ibarra's total offense level is 19, with a criminal history category of I, and a presumptive sentencing guidelines range of 30 to 37 months in the Federal Bureau of Prisons. [PSR: ¶86]. Against the backdrop of the §3553 (a) sentencing factors, Mr. Ibarra humbly asks the Honorable Court to downwardly vary and impose a sentence of time served with a combination of home detention and supervised release.

**Synopsis of Mr. Ibarra's History and Characteristics**

| No. | Subject Matter | Factual Details |
|-----|----------------|-----------------|
| 1 | Birthplace | Hialeah, Florida |
| 2 | DOB | 9/16/1993 (31Yrs Old) |
| 3 | Education and Work Experience | Mr. Ibarra's IQ is in the 50-55 range. He attends three (3) separate schools along with being home-schooled up until 8th Grade. Mr. Ibarra attends Atlantis Academy, a special education school, in Miami, Florida from |

| | | 9th to 12th grades.  Mr. Ibarra's 9th Grade GPA is 1.480, 10th grade GPA is 1.429, 11th Grade GPA is 1.329, and his 12th Grade GPA is in the 1.800 range. Mr. Ibarra recently discloses that he is sexually abused by a male therapist at one of the schools he attends. This emphasizes the point that he can again be a target of bad actors in prison and lays the foundation for his PTSD and anxiety diagnoses while attending therapy with Chrysalis Health.  In terms of work experience, Mr. Ibarra attends various culinary vocational programs. Mr. Ibarra's Autism Spectrum Disorder [ASD] and Intellectual Disability Diagnoses prevent him from fully understanding the multi-layered consequences of his actions.  Mr. Ibarra's cognitive deficits also make it difficult for him to find steady employment. |
|---|---|---|
| 4 | Mother | Ms. Cynthia Portales.  61 Yrs Old.  Born in Chicago, Illinois but lives in South Florida the majority of her life.  Obtains a GED and works as a cardiovascular sonographer, phlebotomist, medical office manager, and realtor.  It is difficult for her to keep a job because of her time commitment to Jorge. |
| 5 | Father | Mr. George Ibarra.  57 Yrs Old.  Born in Havana, Cuba. Lives in South Florida and Northern Georgia. He earns a living rehabilitating and selling properties. |
| 6 | Stepmother | Ms. Zulma Nunez.  56 Yrs Old.  Born in Havana, Cuba. Trained as an accountant.  Partners with her husband George in the property rehabilitation business. Ms. Nunez has a close relationship with Jorge. |
| 7 | Sister | Ms. Tessica Blanco Campbell.  43 Yrs Old.  Works as a firefighter-paramedic in Hollywood, Florida.  Tessica has a close relationship with Jorge. |
| 8 | Brother | Mr. Jason Blanco.  39 Yrs Old.  Captain in the United States Army.  Stationed in Fort Sill, Oklahoma. Jason has a close relationship with Jorge. |
| 9 | Ties to the Community | During the entirety of his life, Mr. Ibarra lives in South Florida with his family. Besides attending therapy sessions with Chrysalis Health, Mr. Ibarra is advancing his personal and spiritual development by attending Westside Baptist Church by serving as an usher and volunteering with the food pantry. This vital social interaction is developing his character and helping him understand that sitting behind a computer all day with no social interaction is damaging to him. [See Infra Exhibits A to C]. |

Sentencing Letters
Providing Deeper Insight into
Mr. Ibarra's History, Character Attributes, and Offense Conduct

Letter 1

Dear Judge Middlebrooks, My name is <u>George Ibarra</u>, and I am the father of Jorge Ibarra. Writing this letter is one of the hardest things I have ever had to do. As a parent, there is no pain like watching your child struggle, especially when you know they did not fully understand the impact of their actions.  I am not here to make excuses for what my son did. What happened was wrong, and I am truly sorry for the fear and hurt it caused to the victims. I want to express my sincere sympathy to everyone affected. I know the Court has to look out for their safety and peace of mind. I just ask that you also take a moment to look at the whole picture, to see my son not just for his mistakes, but also for the struggles he has lived with his whole life. Jorge has had developmental and cognitive challenges since he was young. He was diagnosed with autism and has a low IQ, which makes it very hard for him to understand the consequences of what he does. He may be an adult by age, but mentally and emotionally, he is still very much like a child-confused, vulnerable, and always needing guidance. The heartbreaking part is that even though these issues were always clear, he never got the therapy he needed. He went to special schools, had psychological testing, and even worked with different vocational programs, but no one ever suggested therapy.  I still cannot understand how that happened. Because of that, he went without the help he needed for years.  It is only now, after all of this, that he is finally getting therapy, and something is starting to change. He is showing interest. He is talking about what he is learning. He looks forward to his sessions. It is the first time I have seen him feel hopeful about something that is actually helping him grow. That gives me hope too, that maybe this is the turning point he has needed for a long time. This is why I am begging you not to send my son to jail. With everything he is dealing with, his autism, his mental state, and his emotional delays, jail would not help him. It would break him. He would not understand what is happening or how to cope. There is no doubt in my mind that in jail, Jorge will be lost, scared, and in real danger. I truly believe there are other ways to hold him accountable, while still giving him the structure, support, and continued therapy he so badly needs. I am not writing this because I am in denial. I know Jorge has to take responsibility. I am just asking for compassion, for a second chance, for someone who is finally starting to get the help he should have had all along. With all my heart, thank you for reading this and for considering my words. It means more than I can say.

Letter 2

Dear Judge Middlebrooks, my name is <u>Cynthia Portales</u>, and I write to you today as Jorge Ibarra's mother-his lifelong caregiver, advocate, and above all, the person who knows his heart and his hardships most intimately.  I humbly ask this court to receive my words not only as a character reference but as a mother's deepest plea for compassion and understanding.  Jorge is 31 years old but emotionally, cognitively, and socially, he is still

very much a child. From birth, his life has been marked by hardship. Jorge was born lifeless, with the umbilical cord wrapped tightly around his neck. He had to be resuscitated three times. His early years were spent battling seizures, sleep apnea, and oxygen deprivation. Eventually, doctors diagnosed him with Autism Spectrum Disorder and an Intellectual Disability-later confirmed with a full-scale IQ of 55. These are not mild or invisible challenges. Jorge struggles with everyday comprehension and communication. He cannot tell time or understand how long five minutes feels versus an hour. He cannot do basic math, cannot interpret figures of speech or abstract concepts, and often repeats words or phrases he has heard without knowing their meaning. Simple tasks must be explained and re-explained. His understanding of social situations is incredibly limited, which makes him vulnerable to being misunderstood or harmed. He lacks the instincts that protect most adults-he cannot "read the room," and has no ability to sense danger, deceit, or aggression. He often repeats what others say without understanding context or tone. Abstract thinking, social cues, sarcasm, or figurative language confuse him. Because of this, he is highly vulnerable in everyday life, particularly in unfamiliar or tense situations. I want to share two incidents that clearly show how Jorge's disabilities impact his safety and social interactions. The first occurred during a mold remediation project in our home. I was at work, and though Jorge was in his mid-20's, I instructed him to simply observe the workers from a distance. He did so and was cordial. That evening, I returned and noticed the work was sloppy, and I made a comment aloud- "what a mess!" The next day, when the workers returned, Jorge offered them coffee in an effort to be polite. But in conversation, he repeated what he had heard without knowing their meaning. Simple tasks must be explained and re-explained. His understanding of social situations is incredibly limited, which makes him vulnerable to being misunderstood or harmed. He lacks the instincts that protect most adults-he cannot "read the room," and has no ability to sense danger, deceit, or aggression. He often repeats what others say without understanding context or tone. Abstract thinking, social cues, sarcasm, or figurative language confuse him. Because of this, he is highly vulnerable in everyday life, particularly in unfamiliar or tense situations. I want to share two incidents that clearly show how Jorge's disabilities impact his safety and social interactions. The first occurred during a mold remediation project in our home. I was at work, and though Jorge was in his mid-20's, I instructed him to simply observe the workers from a distance. He did so and was cordial. That evening, I returned and noticed the work was sloppy, and I made a comment aloud- "what a mess!" The next day, when the workers returned, Jorge offered them coffee in an effort to be polite. But in conversation, he repeated what he had heard me say: "My mom says this is a "mess." He did not understand the implications. One of the men flew into a violent rage, charging at my son and threatening to kill him. Jorge was terrified and confused. That day, I had to explain something most people learn instinctively- he could not safely repeat things he heard, especially not around people who might take offense. To this day, Jorge refuses to stay home when any work is being done, because of how frightened he was. The second incident happened while Jorge was walking our small dog, Sunshine, who is trained to remain on our property. As Jorge turned to return home, two small dogs ran up playfully to join them. Jorge, not realizing they had escaped from someone's yard, thought they were just playing, and he began to

laugh joyfully. That moment, a neighbor stormed out of his house screaming profanities at Jorge, calling him a "dumb idiot and yelling that Jorge should know better. I rushed outside to intervene, but the damage was done. Jorge could not comprehend why someone would treat him with such cruelty when he had done nothing wrong. He still asks me, years later, why that man was so angry. These stories illustrate what I wish I could fully explain-Jorge lives in a world he doesn't understand, and one that often doesn't understand him either. He is not dangerous. He is not defiant. He is confused, deeply kind, and heartbreakingly vulnerable. Loud voices terrify him. Conflict shuts him down. He would not survive in prison—not because he would fight back, but because he wouldn't know how. Despite all of this, Jorge is the kindest, gentlest soul I have ever known. His nature is not just harmless— it is innocent. He is the first to offer help, to share what he has, or to cook a meal just to make someone smile. He prays for strangers, laughs freely, and lights up when he is surrounded by family. His favorite joys are simple ones: old music, cooking, and making his nieces and nephews laugh. He is deeply loved by everyone who truly knows him, and I believe that love is his most powerful trait. But Jorge's innocence is also his greatest vulnerability. I fear-truly and terribly fear— what would happen to my son in a prison environment. He cannot defend himself, either verbally or physically. He would not even recognize when someone is trying to manipulate him. Because he often mimics speech or behavior in an attempt to fit in, there is a real risk that he could be coerced or mistaken as disruptive when in reality, he simply doesn't understand. Jorge has never been violent. Loud voices frighten him. He shrinks from conflict. Incarcerating him would be like throwing a child into an adult world he cannot navigate-it would break him. And he would not even understand why. I respectfully ask Your Honor to consider this: Jorge's greatest punishment is not prison—it is the daily challenge of living in a world that does not understand him. He does not need retribution. He needs care, structure, and support. He needs to continue building the small, beautiful life he has dreamed of-one with a job, a family, and a kitchen where he can cook for the people he loves. That is not a fantasy. It is the life I still hope he will have. I understand the seriousness of this moment. I am deeply sorry to the victims for all they have endured. And I know my son is sorry too— he has told me many times that he wishes he could say so directly. But I also know in my heart that Jorge did not act out of cruelty or malice. He acted out of confusion, under the weight of disabilities that affect every part of his life. Please, Your Honor, grant mercy. My son is not a threat to society-but he is deeply at risk from it. I fear that prison will not rehabilitate Jorge; it will destroy him.  Thank you for your time, compassion, and consideration of this plea to Your Honor.

## Letter 3

Dear Judge Middlebrooks, my name is <u>Zulma Nunez</u>, and I am the stepmother of Jorge Ibarra, [Jorgito], as we lovingly call him. I have been a part of his life since he was nine years old, and I am writing this letter with a heavy heart. I know the charges against him are serious, and I am not trying to excuse what happened. I just want to share a bit about who he is and ask for some understanding.  Jorgito has some developmental challenges. He has been diagnosed with autism and has a low IQ in the 50-55 range. Mentally and emotionally, he functions much younger than his actual age. Because of this,

he does not always understand social cues or how his actions might affect others. Over the past few years, he has spent a lot of time online. Unfortunately, without really understanding what he is taking in this politically toxic environment, he made some pretty bad choices. Jorgito's autism prevents him from fully grasping the seriousness of what he was doing in this case. This has been really hard for all of us, and my heart goes out to the people who were hurt by his actions. No one should feel uncomfortable or scared, especially women who are already so often targeted in these kinds of situations. Even though what he did was wrong, I truly believe it was not out of any kind of cruelty or bad intent. Jorgito has always been a gentle, sweet, and kind person. He has never been violent or aggressive. He is the kind of person who smiles at everyone, tries to help wherever he can, and just wants to be liked and accepted. I am really sorry this happened. I support doing what is needed to protect and bring peace to the victims. But I also ask from the bottom of my heart, please consider Jorgito's mental limitations and the fact that he did not truly understand the full impact of what he was doing. With support and the right kind of guidance, I believe he can learn from this and do better moving forward. Thank you for taking the time to read this. We are committed to making sure Jorgito gets the help he needs, and we hope that those affected by this situation also find the peace and justice that they deserve.

## Letter 4

Dear Judge Middlebrooks, my name is Tessica Campbell, and I write this letter as the deeply concerned older sister of Jorge Ibarra Jr.  I write this letter not only out of love for my brother, but out of an overwhelming desire to help the Court understand who he truly is beneath the charges that now define him on paper. For the past 19 years, I have dedicated my life to serving my community as a firefighter, paramedic, and technical rescue specialist in Hollywood, Florida. Through my service, I have seen tragedy, suffering, and the incredible power of compassion and second chances. It is with that same spirit that I ask you today to please show mercy on my brother.  Jorge is 31 years old, but his cognitive and emotional maturity is far behind that number. Diagnosed with Autism Spectrum Disorder and Comorbid Syndrome, he struggles with even the most basic forms of social interaction. His world is solely centered around our family and the comfort of routine. He has no social network outside of our family. He cannot navigate the complexities of modern communication or fully understand how his online actions could be perceived.  My brother does not function in the way most adults do. He requires guidance for daily tasks and explanations for things that others take for granted. Jorge is not violent, dangerous, or malicious. He is a gentle-quiet soul who spends his time playing video games and staying close to our mother, Cynthia Portales. Jorge has always been affectionate, respectful, and generous in spirit, but he is easily overwhelmed, confused, and frightened by situations he cannot process and that includes the criminal proceedings now unfolding around him. Without minimizing the unjustifiable and devastating emotional impact of Jorge's online behavior on the victims in this case, the events surrounding his arrest, which include being taken into custody at gunpoint and questioned without an advocate or guardian in light of his cognitive deficits, have had a traumatic impact upon him and on our entire family. I humbly ask your Honor not to

put my brother in prison because he will not survive incarceration with his lack of nuanced social cues. I respectfully and humbly ask the Court to consider an alternative to imprisonment that includes probation, therapy, and close supervision. I believe Jorge can learn, grow, and never repeat these mistakes, if given the right kind of help. This incredibly stressful situation has already brought more suffering than I can describe. I beg you, as a sister, as a public servant, and as someone who believes in the capacity for mercy and rehabilitation, to show compassion in sentencing. My brother has learned a painful lesson. He will carry this for the rest of his life. Please do not let that life end up in a place that he is not equipped to survive. Your Honor, thank you for considering this letter.

Letter 5

Dear Judge Middlebrook, my name is Jason Blanco, and I am writing this letter as a formal character reference and plea for leniency in the case of my younger brother, Jorge Ibarra, who is currently facing sentencing after pleading guilty to two charges of cyberstalking. I write not only as his elder brother, but as a career military officer with over 18 years of honorable and dedicated service in the United States Army. I have led America's sons and daughters in both peacetime and in combat. I understand the value of accountability, discipline, and justice. However, I also deeply believe in the importance of compassion, context, and the opportunity for rehabilitation.  My brother has been diagnosed with Autism Spectrum Disorder and Comorbid Syndrome. Although he is 31 years old in age, his social development and emotional intelligence more closely resemble that of an adolescent. Jorge has no meaningful social circle outside of our immediate family and lacks the interpersonal understanding to fully comprehend how his online interactions can be interpreted. Jorge is not malicious. His autism prevents him from meaningfully understanding the full import of his unacceptable on-line behavior.  Prior to this case, Jorge spends nearly every hour of every day immersed in video games, isolated from the real world and its complex social nuances.  Jorge is quite literally a teenager in a man's body. I do not condone what my brother did, nor do I dismiss the pain experienced by the victims. I understand their fear and the seriousness of these allegations. But I ask the Court to weigh those experiences against the full picture of who my brother is. Despite the irresponsible and threatening use of language, he would never cross the line and commit actual physical violence towards another human being. The trauma inducing conditions surrounding his arrest with agents bursting into the home with guns drawn, despite his documented cognitive impairments, has left him utterly devastated. This process has already been a punishment that he may never recover from.  The judicial system is founded on the principle of justice tempered with mercy. I earnestly ask the Court to consider the unique nature of my brother's condition. He is not a threat to society-he is a man lost in a world that he struggles to understand. The structured-punitive environment of incarceration would not only be ineffective but inhumane in his case. He would not survive in prison, mentally or emotionally. What he needs is compassionate care, continued mental health support, and the opportunity to grow and heal in a setting tailored to his very real challenges.  An individual with his condition does not belong behind bars. As someone who has sworn an oath to uphold and defend the Constitution

and its values, I believe deeply in accountability, but also in redemption. My brother has suffered greatly and so has our family. Jorg has learned his lesson, and I am wholly confident that with appropriate supervision and support, Jorge will never again find himself in a situation like this. I humbly request that the Court consider alternative sentencing options such as probation, counseling, and structured oversight in lieu of incarceration. I make this plea not only out of familial love, but out of a professional assessment shaped by nearly two decades of leading, mentoring, and developing individuals of all backgrounds and capabilities. Thank you for taking the time to consider my words and for your dedication to ensuring justice is administered with fairness, compassion, and humanity.

Letter 6

Dear Judge Middlebrooks, my name is <u>Gloria Rostoy</u>, and I am writing this letter to serve as a character reference for Jorge Ibarra, a 31-year-old man with a cognitive disability and a deep-rooted faith in God. Jorge was diagnosed with autism at a young age and has an IQ of 55, which places his cognitive and emotional functioning at that of an 8-year-old child. Despite these challenges, Jorge has been raised with unwavering love, guidance, and a moral foundation, which are reflected in the way he lives his life. I have had the privilege of knowing Jorge and his mother for over 20 years, and I have personally witnessed him grow into a fine young man. From his childhood to adulthood, Jorge has consistently displayed a kind heart, a respectful attitude, and a strong desire to do what is right. He is gentle in nature and thrives in calm, structured environments. Jorge was raised by his devoted mother, a single parent since he was just 18 months old. She has worked multiple jobs throughout his life to provide him with not only the basic necessities but also a home built on love, structure, and Christian values. From an early age, Jorge was taught to love God, respect others, and to live a life of humility and kindness. Although he faces significant cognitive limitations, Jorge is not someone who can fully understand the consequences of adult decisions. He does not possess the mental or emotional maturity to process complex situations the way a typical adult would. It would be unjust to hold him to a standard of accountability that does not match his actual capacity. Jorge comes from a family rooted in service and honor. His brother currently serves in the United States Army, and his sister is a firefighter. This family lives by values of integrity, patriotism, and faith-qualities Jorge mirrors in his own unique and innocent way. He may not serve in uniform like his siblings, but he carries the same spirit of goodness, sincerity, and love for others. I urge the court to consider Jorge's disability and the full context of his life. He is not a threat to society but rather a vulnerable individual who requires compassion, understanding, and support.

Letter 7

Dear Judge Middlebrooks, my name is <u>Carmen Crespo</u>, and I would like to respectfully and honestly express my sincere support for him during this difficult situation in hopes that all involved will have empathy and compassion for him. I have had the pleasure of getting to know Jorge, and during this time, I have come to know him as a person of

integrity, honesty, and strong moral character. Although he has been diagnosed with Autism and an Intellectual disability from a young age he still thrives and enjoys helping people. His disorder unfortunately makes his social development and emotional intelligence much lower than the average person meaning that he is incapable of understanding the consequences he is currently facing. Jorge doesn't have an ill will or bone in his being. He is kind and gentle, caring and loving. From the time I have known Jorge and his mother Cynthia, they have both welcomed me with open arms and today I can call them family. Jorge has often helped me with a variety of projects around the house and is always there for me in my time of need. He has also helped me to open my heart to God by showing me that anyone can change. I am aware of the charges that Jorge Ibarra is facing but I would also like to let you all know that Jorge is not a menace or a threat to society. Jorge has a good approach and intent to everything he does and expresses. He is a regular member of Westside Baptist Church and donates his time to help others. He also helps his neighbors and the community elderly. I believe that Jorge Ibarra is a person of good character who made a mistake, and he is committed to making amends and becoming a better person. I believe that Jorge has learned from his mistake and is committed to making things right. I am confident that given the opportunity he can continue working on himself towards positive outcomes, while also making valuable contributions.

Letter 8

Dear Judge Middlebrooks, my name is Patricia Cabrajal, and I am writing this letter to serve as a character reference for Jorge Ibarra, a 31-year-old young man with cognitive disability, diagnosed with Autism and a very low IQ. I have had the privilege of getting to know Jorge and his Mother, my dear friend Cynthia, for four years. Since I moved into our neighborhood, they welcomed me and my family warmly and with open arms. My husband was diagnosed with ALS [amyotrophic lateral sclerosis] in 2024, and Jorge has been very helpful to him. He has been concerned for his health and well-being, committed and dedicated his time to uplift my husband's spirits. often motivating and helping him with emotional support. Jorge makes it a point lift him up with prayers. He also speaks with him about the word of God. Jorge is wonderful and trustworthy. He has strong Christian beliefs and morals. I kindly urge the court to consider Jorge's disability and understand that he is "NOT" a threat to society but rather a gentle sole misunderstood with autism. He is a vulnerable individual easily misunderstood, who requires compassion support and understanding. It is my understanding and professional opinion that Jorge would not benefit from harsh punishment such as incarceration. Whereby he might lose his life due to his lack of social skills and ques instead, receiving, guidance and structured supervision would help Jorge become an integral part of society. Thank you for taking the time to consider my words and to ensure that justice is administered with fairness, compassion and empathy.

Letter 9

Dear Judge Middlebrooks, my name is <u>Manuel Barahona</u>, and I am the pastor at Westside Baptist Church in Boynton Beach, Florida. Our church has two services. The first service is in English, and the second service is in Spanish.  Jorge Ibarra is a member of Westside Baptist Church in good standing since 2024. Just recently this year, Jorge got baptized in the church, showing his faith publicly. He has been serving as a volunteer usher on our first service on Sundays since 03-09-25 for three hours each service. That is a total of 7 Sundays with a grand total sum of 21 hours. Jorge has requested to continue to serve as a volunteer until further notice.

Letter 10

Dear Judge Middlebrooks, my name is <u>Ivan Chico,</u> and I know Jorge and his mom, Cynthia Portales, because we are all members of the Westside Baptist Church, located at 3711 Old Boynton Road, Boynton Beach, FL 33436. We see in Jorge a fine young man who is kind, attentive and respectful to others. And during church service we see how he cares to stay close to his mom, while listening attentively to the Pastor's preaching. Jorge loves to serve at our church. He currently volunteers as an usher, greeting and assisting members and visitors at the door. He also volunteers with his mom at our church's food pantry by helping distribute food to people in need. The church is very grateful for Jorge's willingness and commitment to help with all of these things, and it is a true blessing to have him in our church. Our hope and prayer are for Jorge to continue growing in his relationship with the Lord and have him continue his service in our church for many more years to come.  If you can, please be lenient on Jorge when you sentence him.

Letter 11

Dear Judge Middlebrooks, my name is <u>Jill O'Dell</u>, and I oversee the Food Pantry Ministry of Westside Baptist Church in Boynton Beach, Florida. We serve the community in the capacity of a Food Pantry Ministry, and we distribute twice a month. Jorge Ibarra has volunteered during the distribution since March 1st, 2025, with a cumulative 10 hours of volunteering. He is committed, attentive, caring and dedicated to this ministry and will continue to serve. We are grateful that he is willing to do so.

Letter 12

Dear Judge Middlebrooks, my name is <u>Beverly Peterson</u>.  I am an 83-year-old woman that is friends with Jorge Ibarra.  I have known Jorge for about two years, and I met him through his mother, Cynthia Portales, whom was my caregiver at the time. When I met Jorge, we connected right away, and we have a warm and caring relationship. He treats me with respect and kindness. He is always eager to see that I am comfortable, and my needs are met. As an example of his kindness, he always opens and closes doors for me. If we are shopping, he carries packages for me and he gives me his arm for support when

we are walking because I walk with a cane. Jorge enjoys being a host to me in his home. He often prepares and serves dinner for me. His specialty is his chicken rice, and he makes the best Cuban coffee.  Jorge exhibits much love and respect to his family and friends. He has a 2-year-old niece that he adores, and she loves him the same. I understand Jorge made a mistake and faces very serious consequences.  There is no question that Jorge is remorseful about this situation because he has repeatedly expressed this remorse to me. I know that he is being sincere in this expression of remorse.  Your Honor, he has so much good to contribute to his family, friends, and community.  Please find it in your heart to display the most amount of leniency towards him when you are deciding a fair and just sentence.

Letter 13

Dear Judge Middlebrooks, my name is Isaiah Reyes and I met Jorge thru online gaming back in 2012. Ever since then, Jorge has always been like a brother to me. The first time I went to visit him and his mother, I remember that day how they welcomed me to their house and treated me like family. I remember us having dinner that night, we joked around, and we would laugh for hours. My relationship with Jorge and his family throughout the years made me feel as I was already part of the family.  Jorge has always been there for me since we met, we can talk all day about anything or even any problems that we may have in life. We would spend almost every summer in Miami laughing and having a good time, even visiting his grandfather and spend time with the family. Every time that I have been with Jorge in person, he has never been a violent, aggressive or disrespectful person towards anyone in public or even his mother at home. He has always been a good person, always cracks a joke, and sometimes he can be really introverted wanting to avoid trouble and drama.  Jorge and I would always talk about how we want to travel to Dubai together one day and start a business. I know Jorge is really nice. When you spend time with him, you can notice his innocence and kindness. He always treats me like his little brother. Sadly, we don't get to spend much time together in person since we live in different states now and we are all grown up. I am always busy working. However, we definitely talk every day and used to play video games online when we could be with our other friends. I am really looking forward to spending some time with my brother Jorge again. I will always be here for him and his family just like he has always been there for me. Jorge is honestly not a threat to anyone, he knows what happened is not right and he regrets every bit of it. These last couple of months, we have been talking every day, and I have been mentoring him.  He is going to church and praying. He tells me every day about how he wants to become a chef so we can work and start our business together. I know Jorge long enough and I know the kind of person he is, and I know he would never hurt anyone. I am praying every day for him and his family that everything goes right in Court.

Letter 14

Your Honor, my name is <u>Manuel Ibarra Sr</u>. I am grandfather of Jorge Ibarra Jr. I write this letter with heavy heart and sadness. I know pain happen, and I am very sorry for it. I not try to make excuse for my grandson. I only ask you, please, see the person he is inside. He is quiet boy, kind, not bad in heart. He always has hard time, but he don't know how to talk about it. Sometimes people don't see his struggle. I am very afraid if he go to jail, it will not only punish him, but it will break him. Please, Your Honor, maybe there is another way. A way where he takes responsibility but also stay safe and get help. I will be here to help him learn, to grow. I promise this. I just hope he have chance to fix his life and move forward. Thank you for listening to a grandfather who loves his grandson very much.

Letter 15

Dear Judge Middlebrooks, my name is <u>Manuel Ibarra</u>, and I am the uncle of Jorge Ibarra. I am writing this letter to ask you, please, to have some understanding and mercy for him. This situation has been very hard and surprising for our family. Jorge has had a hard life since he was little. He has some mental problems that make things difficult for him to understand like others do. Even with that, he has always been a good young man. He is respectful, polite, and never violent. He is not someone who hurts people. He is quiet and kind. That's why this is such a shock. I know my nephew. He is not perfect, but he is not a bad person. I believe maybe he didn't really understand the situation he got into. He is not someone who wants to scare or harm anyone.  Please, Your Honor, I ask you to see the person he truly is. He needs help, not to be punished in a way that will destroy his future. I believe with support, he can learn from this and do better. Thank you for reading my letter. I respect your time and your position. I just wanted to speak from my heart and tell you about the Jorge I know.

Letter 16

Dear Judge Middlebrooks, my name is <u>Orlaida Fernandez</u>, and I am writing this letter to provide a character reference for Jorge Ibarra. I would like to respectfully and honestly express my sincere support for him during this difficult situation in hopes that all involved will have empathy and compassion for him. I have had the pleasure of getting to know Jorge, and during this time, I have come to know him as a person of integrity, honesty, and strong moral character. Although he has been diagnosed with Autism and an Intellectual disability from a young age, he still thrives and enjoys helping people. Jorge's disorder unfortunately makes his social development and emotional intelligence much lower than the average person, meaning that he is incapable of understanding the full consequence of what he is currently facing. Jorge doesn't have an ill will or bone in his being. He is kind and gentle, caring and loving. From the time I have known Jorge and his mother Cynthia, they have both welcomed me with open arms and today I can call them family. Jorge has often helped me with a variety of projects around the house and is always there for me in my time of need. I am aware of the charges that Jorge Ibarra is

facing but I would also like to let you know that Jorge is not a menace or a threat to society. Jorge has a good approach and intent to everything he does and expresses. He is a regular member of Westside Baptist Church and donates his time to help others. He also helps his neighbors and the elderly in the community.  I believe that Jorge is a person of good character who made a mistake, and he is committed to making amends and becoming a better person. I believe that Jorge has learned from his mistake and is committed to making things right. I am confident that given the opportunity he can continue working on himself towards positive outcomes, while also making valuable contributions to society. In saying all of this, I am very sorry for everything endured by the victims in this case. Thank you for considering my letter Your Honor.

Letter 17

Dear Judge Middlebrooks, my name is <u>Leonor Huerta</u>, and this letter serves as a character reference for Jorge Ibarra.  I first met Jorge through his mother, as she and I worked together.  Jorge has been raised primarily by his mother.  She has raised him in love, integrity, honor, respect and faith.  Jorge's mother has worked many jobs over the years to provide for him.  I had lived with Cynthia and Jorge the month of May 2015.  In that month, I really got to know Jorge.  And despite his disabilities and mentality of a very young boy, he is respectful, funny and courteous.  He has always gone above and beyond to help his mother.  While she was at work, he would clean and cook for her to make her life easier.  His mother had told me about his difficult birth and formative years.  Jorge has the mentality of someone who is very young and naïve.  However, he has a very good support system.  His brother is in the Military, his sister is a Firefighter, his mother a devoted Christian.  He has been shown love, integrity, discipline, respect and faith.  Without disrespecting the very difficult ordeal experienced by the victims in this case, I ask the court to consider Jorge's disabilities and show him compassion and understanding when you announce a sentence.

Downward Variance Argument No. 1
[Mr. Ibarra's Autism Spectrum Disorder, 50-55 IQ-Intellectual Disability are Inextricably Intertwined with the Offense Conduct in this Case]

Without undermining the very seriousness of the offense conduct in this case, a preliminary analysis yields the conclusion that a technologically sophisticated Mr. Ibarra crosses the permissible free speech line and indefensibly cyberstalks two female conservative online personalities that have differing political opinions than him. The intensity and vileness of this cyberstalking activity, coupled with Mr. Ibarra using various applications to hide his identity as the sender of these indefensible communications, gives prima facie credence to the imposition of a

guidelines sentence. This rebuttable presumptive view is considerably weakened when one understands the nuanced interplay between Mr. Ibarra's autism spectrum disorder, intellectual disability, and the offense conduct in this case.

In order to lay a foundation to understand all off this, the 5th Edition of the Diagnostic and Statistical Manual of Mental Disorders [DSM-5] defines autism spectrum disorder and the idea of intellectual disability as follows:

### Autism Spectrum Disorder

Persistent deficits in social communication and social interaction across multiple contexts, as manifested by all of the following: Deficits in social-emotional reciprocity, ranging, for example, from abnormal social approach and failure of normal back-and-forth conversation; to reduced sharing of interests, emotions, or affect; to failure to initiate or respond to social interactions. Deficits in nonverbal communicative behaviors used for social interaction ranging, for example, from poorly integrated verbal and nonverbal communication; to abnormalities in eye contact and body language or deficits in understanding and use of gestures; to a total lack of facial expressions and nonverbal communication. Deficits in developing, maintaining, and understanding relationships, ranging, for example, from difficulties adjusting behavior to suit various social contexts; to difficulties in sharing imaginative play or in making friends; to absence of interest in peers. Restricted, repetitive patterns of behavior, interests, or activities, as manifested by at least two of the following: Stereotyped or repetitive motor movements, use of objects, or speech [e.g., simple motor stereotypies, lining up toys or flipping objects, echolalia, idiosyncratic phrases]. Insistence on sameness, inflexible adherence to routines, or ritualized patterns of verbal or nonverbal behavior [e.g., extreme distress at small changes, difficulties with transitions, rigid thinking patterns, greeting rituals, need to take same route or eat same food every day]. Highly restricted, fixated interests that are abnormal in intensity or focus [e.g., strong attachment to or preoccupation with unusual objects, excessively circumscribed or perseverative interests]. Hyper or hypo-reactivity to sensory input or unusual interest in sensory aspects of the environment [e.g., apparent indifference to pain/temperature, adverse response to specific sounds or textures, excessive smelling or touching of objects, visual fascination with lights or movement]. Symptoms must be present in the early developmental period [but may not become fully manifest until social demands exceed limited capacities or may be masked by learned strategies in later life]. Symptoms cause clinically significant impairment in social, occupational, or other important areas of current functioning. These disturbances are not better explained by intellectual developmental disorder [intellectual disability] or global developmental delay. Intellectual developmental disorder and autism spectrum disorder frequently co-occur to make comorbid diagnoses of autism spectrum disorder and

intellectual developmental disorder. Social communication should be below that expected for general developmental level. Note: Individuals with a well-established DSM-IV diagnosis of autistic disorder, Asperger's disorder, or pervasive developmental disorder, not otherwise specified, should be given the diagnosis of autism spectrum disorder. Individuals who have marked deficits in social communication, but whose symptoms do not otherwise meet criteria for autism spectrum disorder, should be evaluated for social [pragmatic] communication disorder. [Pages 56 to 58].

### Intellectual Developmental Disorder/Intellectual Disability

Intellectual developmental disorder [Intellectual Disability] is a disorder with onset during the developmental period that includes both intellectual and adaptive functioning deficits in conceptual, social, and practical domains. The following three criteria must be met: Deficits in intellectual functions, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, confirmed by both clinical assessment and individualized, standardized intelligence testing. Deficits in adaptive functioning that result in failure to meet developmental and sociocultural standards for personal independence and social responsibility. Without ongoing support, the adaptive deficits limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community. Onset of intellectual and adaptive deficits during the developmental period. [Page 38].

Dr. Sheila Rapa, Psy.D., who will be testifying at the upcoming sentencing hearing, adds a further vital layer of analysis to the interplay between Mr. Ibarra's cognitive deficits and offense conduct through her Socratic style answers to the following questions posed by counsel:[1]

**Question**: What is the relationship between Jorge's diagnosed autism spectrum disorder, intellectual disability, and the cyberstalking he engages in?

**Dr. Rapa**: Individuals with autism experience difficulties with social communication and understanding social cues. This can sometimes lead to conflict and misunderstandings in social interactions. In some cases, these challenges might manifest in behaviors that could be perceived as stalking, such as repeated attempts to engage with someone who is not reciprocating interest.

---

[1] Dr. Rapa's psychological forensic examination report will be submitted under seal for the Honorable Court's review, along with all of the documents listed in [DE 33].

Individuals with autism also have intense, focused interests in specific people or topics such as politics. While this is often a positive trait, in certain contexts, it might lead to obsessive behaviors such as stalking. Sometimes, their communication and persistence can be extreme and inappropriate, yet the individual does not fully realize the impact of their words on others. For example, a person with autism might not recognize social boundaries and appropriate social behavior, leading to behaviors that could be seen as intrusive, obsessive, and in violation of personal boundaries. Intellectual disabilities can further impact communication skills, making it difficult for individuals to navigate social interactions effectively or appropriately.

**Question**: How do you square the technological profiency employed by Jorge in this case against the reality of his documented cognitive deficits?

**Dr. Rapa**:  An individual with autism and some level of intellectual disability can absolutely become technologically proficient. Proficiency in technology depends not only on cognitive abilities but also on the right support, motivation, and learning environment. Many individuals with autism have specific areas of interest, and if technology falls within that interest, they may be highly motivated to learn and excel in it.  Such individuals can learn to operate computers, smartphones, and tablets, including using the internet for research, managing emails, and employing basic software.  If technology is a specialized interest in an individual with autism, they can even develop proficiency in specific software applications, coding, graphic design, video editing, or gaming.

Mr. Ibarra asks the Honorable Court to consider these cognitive deficits along with their nuanced interconnection to the underlying offense conduct in its downward variance calculus.

### Downward Variance Argument No. 2
### [The Physical Danger Facing Mr. Ibarra in Prison because of his Cognitive Deficits]

Because of his lack of social cues and ability to read a room, Mr. Ibarra is picked on by other inmates during his brief detention prior to being granted pretrial release in this case. Doctor Rapa explains the risks facing Mr. Ibarra in prison as follows:

> Incarceration can be particularly challenging and detrimental for individuals with autism and intellectual disabilities for several reasons. Many correctional staff may not have adequate training or understanding of autism and intellectual disabilities. Behaviors that are characteristic of autism, such as social withdrawal or difficulty with communication, may be misinterpreted as defiance or non-compliance, resulting in punitive measures rather than understanding. Individuals with autism often struggle with social communication and understanding social cues. In a prison environment, this can lead to social isolation, as they may find it hard to connect with peers or navigate the social dynamics of prison life. Due to their differences, individuals with autism and intellectual disabilities may be more vulnerable to bullying or exploitation by other inmates. Prisons can be loud, chaotic, and overwhelming. Individuals with autism may be particularly sensitive to sensory inputs, making the prison environment distressing and anxiety-inducing. The confined spaces and lack of quiet areas can exacerbate sensory issues, leading to increased agitation or withdrawal. Access to specialized mental health care and support services may be limited in prison settings. Individuals with intellectual disabilities may struggle to communicate their needs, feelings, or experiences effectively, which can lead to frustration and a sense of helplessness. They may lack the ability to advocate for themselves or understand the legal processes they are involved in, making it challenging to navigate their situation. Sudden changes in routine or environment can be particularly challenging, leading to increased anxiety and stress. The stressors of incarceration can exacerbate existing mental health issues, leading to higher rates of anxiety, depression, and other psychological challenges.

Mr. Ibarra asks the Honorable Court to take this reality into account in its downward variance calculus.

### Downward Variance Argument No. 3
### Judiciary Sentencing Information Statistics Database for §2A6.2 Cases and
### Two Separate District Court Cases Providing Support for a Downward Variance
### [JSIN-jsin.ussc.gov]

From a JSIN perspective, similarly scoring defendants to Mr. Ibarra with a primary guideline of §2A6.2, a final offense level of 19, a criminal history category of I,

and a presumptive sentencing guidelines range of 30 to 37months, receive a downward variance or downward departure 44 percent of the time. The commentary to the statistics does not discuss the extent of the variances or if autism spectrum disorder and intellectual disability issues factored into the district courts' downward variance determinations.

In saying this, it is not unprecedented for a district court to downwardly vary to home detention and probation when a defendant sits squarely in a Zone D presumptive sentencing guidelines range like Mr. Ibarra and is diagnosed with autism spectrum disorder.

In *U.S.A. v. Jonathan Dale Knott*, 638 F. Supp. 3d 1310, 1320-1322, [M.D. Ala. 2022], a child pornography case, the district court downwardly varies from the recommended guidelines sentence of 27 months of incarceration to a sentence of 27 months of home detention with location monitoring as a special condition of seven (7) years of supervised release because the district court finds that Mr. Knott's autism spectrum disorder rendered him extraordinarily vulnerable to abuse in prison and incarceration was not necessary to effectuate specific and general deterrence, or to promote respect for the law.

In *U.S.A. v. Erik M. Huseth*, 18-20027-JAR, 1-35, [D. Kan. 2021], a child pornography case where the defendant has an IQ of 123, more than twice as high as Mr. Ibarra's IQ range of 50-55, the district court downwardly varies from a presumptive sentencing guidelines range of 78-97 months [DE 73: Page 1] to five (5) years of probation [DE 101: Page 2] because Mr. Huseth's autism spectrum disorder made him more vulnerable to physical harm in a prison setting and his cognitive impairments justified treatment in the context of probation over a prison sentence because he did not appreciate the full import of his offense conduct. [DE 73: Page 13]. In the district court's view, this sentence advanced all of the §3553 (a) sentencing goals, including promoting deterrence

and respect for the law. [Id. at Pages 19-21].  In its sentencing analysis, the Court emphasizes that a sentencing court "may not presume that the guidelines range is reasonable" but "must make an individualized assessment based on the facts presented." [Id. at 34]. *Gall v. United States*, 552 U.S. 38, 50 [2007] *[citing Rita v. United States*, 551 U.S. 338, 351 [2007].

Mr. Ibarra asks the Honorable Court to use these JSIN statistics and cases to consider downwardly varying in his case.

## Conclusion

Mr. Ibarra respectfully submits that against the backdrop of his cognitive deficits, the imposition of a 30-37month guidelines sentence is too much punishment. A combination of home detention, probation, therapy, volunteer work at church, and maintaining the current computer restrictions are sufficient but not greater than necessary to advance the sentencing goals of §3553(a).

By: /s/ Jacob A. Cohen, Esq.
Jacob A. Cohen, Esq.
Fla. Bar No. 0162530



Exhibit A



Exhibit B



Exhibit C

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>May 1, 2025</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

JACOB A. COHEN, ESQ.
Law Offices of Jacob A. Cohen, PLLC
750 South Dixie Highway
Boca Raton, FL 33432
Telephone 561-715-7866
E-mail – jacob@jacobcohenlaw.com

By: <u>/s/ Jacob A. Cohen, Esq</u>.
Jacob A. Cohen, Esq.
Fla. Bar No. 0162530